BENEDITOS T. DURAN v. STATE

No. 33,878.   January 3, 1962

WOODLEY, Presiding Judge, dissented.

*Joseph J. Rey,* El Paso, for appellant.

*Leon Douglas*, State's Attorney, Austin, for the state.

McDONALD, Judge.

The offense is driving a motor vehicle on a public highway while intoxicated; the punishment, a fine of $50.00 and 3 days' confinement in the county jail.

Appellant's sole contention is that the evidence is insufficient to support the judgment.

The state's evidence reflects that two cars were parked along the curb of a street in El Paso. The cars had their bumpers hung together, one car having bumped into the one in front of it, pushing it into the one in front of it. As reflected by the statement of facts and counsel's briefs, there is no question as to the intoxication of the appellant, as later pointed out by us, the sole question being the sufficiency of the evidence to connect the appellant as being the driver of the vehicle at the time of the accident. We shall quote from the testimony of the various witnesses.

The witness Galvan was asked:

"Q. You did not see him driving the car? A. No.

"Q. Was the defendant behind the steering wheel when you first saw him? A. No."

The witness Jose B. Drusina related that he turned to see a car without the driver moving faster than you would say a car could roll from an incline and hit his car in the rear bumper; that he walked up to the car and saw a man in a white shirt behind the wheel, not driving it but behind the wheel, the car was parked completely and the motor off, and another man that seemed to be a little lower in stature was sitting beside him; that Officer Rodriguez asked him to identify the man, and he stated that he couldn't, other than a white shirt and the approxicate stature that he was. This witness was then asked:

"Q. Let me indicate to you the defendant Mr. Duran—could you say that he was the driver of the car? A. Not positively.

\* \* \* \*

"Q. Then at that time you were able to recognize him, is that it? A. No, sir. I kept on saying it was a man with a white shirt, about 5'6", 5'8".

* * * *

"Q. As far as you know this is not the man that was behind the wheel? A. I would rather say that I don't know, because if I could not identify him positively I would be harming the man.

"Q. All right, and at no time did you see the car being driven or the motor running, did you, at any time? A. At no time."

State's witness, Patrolman Cortex Martin, related that when he arrived at the scene he found nobody in vehicle No. 3 (the appellant's vehicle as designated) ; that two witnesses told him what happened, and as he was taking measurements and investigating the accident the appellant "came back to his car with his wife and the witnesses stated that he was the driver and *he also stated that he had been driving the car, too.*"

"The Court: What did he say? Witness: He had stated that he had been driving the car.

"Q. All right, at the scene at that time did you have occasion to question the Defendant as to whether he was the driver of the car at the time it ran into the No. 2 vehicle? A. That happened when we were taking him into the police car, sir.

"Q. All right, well, what did he say? A. *He stated that it was his car and that he had been the driver.*

"Q. Did he indicate that he had been in the—anything about the accident, why it had happened or what his reasoning was? A. I don't remember that there, sir, he—I was getting the measurements—at that particular time we escorted him over to the car and the reason he was processed for D.W.I. was on account of the witnesses.

* * * *

"The Court: Said what, now? Witness: That he had parked the car. He was the driver of the car and he stated that he had parked the car.

538

"The Court: *He didn't say that he was driving the car at the time of the accident?* Witness: *Well, no, otherwise, he had stated that he had been driving the car,* yes sir. I want to express myself on that—he had said he did.

"Q. Well, what the Court is trying to find out, *did he say he was driving at the time of the accident* or that he had parked the car there? A. Well—

"The Court: Just if you can remember. A. Yeah, well, sir, *I can't recall the whole thing, I do know that he had told me that he had been driving the car.*

"Q. He didn't tell you what time? A. *No, sir.*

"Q. He didn't admit the accident? A. No, sir, he never did."

Officer Rodriguez of the El Paso Police Department related that he went to the scene of the accident and asked the appellant if that was his automobile and he said it was; that he asked appellant if he had been driving that automobile and he said that he had; that he took appellant to the patrol car and questioned him further *if he had been the driver of the automobile during the accident and he said he was trying to gain a parking space* and that's the reason he had just bumped the car in front, but had no knowledge of that car hitting the other one in front. The witness Rodriguez further stated that he asked appellant "if he knew there were two vehicles involved in the accident, other than him," and he said he had no knowledge of it.

The appellant's testimony was to the effect that he had parked his car by Newberry's to wait for his wife; that he parked his car at 5:00 o'clock; that his wife got off from work at 6:00 o'clock; that he locked his automobile; that he went to drink a few beers at the Lounge Bar on the other side of the post office; and that when he came back the officer arrested him.
"Q. The officers were there. And then what happened? A. They told me if I was driving the car and I told them yeah,

I was driving.

* * * *

"Q. And you said you were? A. Yes, I was, but I wasn't, I didn't cause that accident or anything.

\* \* \* \*

"Q. Did you drive that car any time after 5:00 o'clock? A. No, ah, ah, the officer called the wrecker and took my car away.

"Q. Do you know anything about who moved that car after 5:00 o'clock? A. No, sir."

There is no question presented as to the intoxication of the appellant. He voluntarily submitted to a blood test, and all of the evidence with reference to the blood test was stipulated by counsel. In the opinion of the expert witness, the blood sample, showing .22, indicated that the person from whom the sample was taken was intoxicated at the time it was taken.

In viewing the evidence adduced most favorably to the State, we find that although it was established that the appellant *had been driving the car*, it was not established *when he drove it*. we concede that the State's evidence adduced from the witness Rodriguez is very favorable to the State, and from it we might infer that the appellant admitted to Rodriguez that he (appellant) was driving the car at the time of the accident, for appellant did state that he was trying to gain a parking space and that's the reason he had just bumped the car in front. However, we find nothing in the evidence fixing the time of the accident. The car in front that appellant admitted bumping might not have been the same car involved in the accident in question.

Finding the evidence insufficient to sustain the judgment, the cause is reversed.

WOODLEY, Presiding Judge (dissenting).

As I understand the evidence upon which the trial judge found appellant guilty, Galvan's automobile, an Oldsmobile which was parked behind Drusina's Ford automobile, was pushed by appellant's Pontiac automobile into Drusina's Ford automobile at about 6 P.M. Appellant was arrested at the scene shortly thereafter by Officer Rodriguez, at which time the evidence shows he was intoxicated.

Appellant testified that he parked and locked his automobile about 5 P.M. at which time he was not intoxicated, and had not been drinking; that he consumed six beers before he returned to his car and found the officers there. He denied that he was involved in the accident or that he drove the car after 5 P.M. and testified that he did not remember telling Officer Rodriquez "about hitting the car because you needed some space", but testified that the officers asked "if I was driving the car and I told them yeah I was driving. Q. Asked if you were the driver of the car? A. Yes. Q. And you said you were? A. Yes, I was, but I wasn't, I didn't cause that accident or anything."

Officer Rodriguez testified: "Q. All right, now Officer, would you tell the Court what your actions were on February 25th of 1961 in connection with the Defendant Mr. Duran?

"A. Upon arrival at the scene of the accident I first talked to Mr. Drusina who sits over here in the courtroom and he stated to me that there were two subjects in the car that had hit the car behind his— * * * as I was talking to him and the other gentleman, Mr. Galvan, the Defendant Mr. Duran came to the car and he stated, Mr. Drusina stated to me 'That's him, right there'. At that time I went and asked Mr. Duran if that was his automobile and he said it was, so I asked him if he had been driving that automobile and he said that he had. * * * After I got him in the car then I questioned him further if he had been the driver of the automobile during the accident and he said he was trying to gain a parking space and that's the reason he had just bumped the car in front, but had no knowledge of that car hitting the other one in front."

Drusina testified that he saw the Oldsmobile moving and turned to see who was pushing it and saw a man behind the wheel and another man in the third car (the Pontiac), and went to call the police.

According to appellant's testimony, his car was locked and the officers were there when he came to it after the accident.

I would hold that the evidence, viewed in the light most favorable to the trial judge's findings, is sufficient to sustain the conviction.